**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 12-17379 |
| | ) | |
| | ) | Chapter 7 |
| LOUIS PHILLIPUS MEYER and | ) | |
| LYNN MEYER, | ) | |
| | ) | Adv. No. |
| | ) | |
| Debtors. | ) | |
| | ) | |
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, NEW YORK BRANCH, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOUIS PHILLIPUS MEYER and LYNN MEYER, | ) ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF INDEBTEDNESS**

NOW COMES Plaintiff DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, NEW YORK BRANCH ("DZ Bank"), by and through counsel, and for its Complaint to Determine Dischargeability of Indebtedness, pursuant to Section 523 of the Bankruptcy Code, against LOUIS PHILLIPUS MEYER ("Louis Meyer") and LYNN MEYER ("Lynn

DZ Bank's Complaint to
Determine Dischargeability of
Indebtedness

Page 1 of 20

**IN PACTA PLLC**
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 1 of 20

Meyer") (collectively, the "Debtors"), states as follows:

## BACKGROUND

1. Plaintiff, DZ Bank, is a creditor of the Debtors under a loan made by Brooke Credit Corporation ("BCC") to non-party Choice Cash Advance, LLC f/k/a Choice Insurance Agency, LLC ("Choice Insurance") (the "Loan" or, as further defined below, the "Note"), which the Debtors personally guaranteed. As discussed in detail below, the Loan and the Debtors' personal guaranties were assigned to DZ Bank.

2. DZ Bank holds a judgment in the amount of $1,710,469.93 against Choice Insurance.[1]

3. Louis Meyer and Lynn Meyer are debtors in Case No. 12-17379, a Chapter 7 bankruptcy filed in the Western District of Washington.

4. This is an adversary proceeding objecting to the dischargeability of the debt owed by the Debtors to DZ Bank, under Section 523 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 4007 and 7001(6).

5. This Court has jurisdiction and venue over this matter pursuant to 28 U.S.C. §1332(a)(2) and §1391(a).

6. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(I).

7. The Debtors carefully plotted and carried out a scheme whereby the collateral pledged under the Loan would be sold, so that the Debtors could pay for a variety of personal expenses and debts, while withholding the sales proceeds from DZ Bank. As discussed in detail below, the Debtors' scheme utilized a series of transfers between entities controlled by the Debtors so that the collateral pledged under the Loan

---

[1] As of the filing of this Complaint, entry of DZ Bank's judgment is pending. See ¶ 78 below.

DZ Bank's Complaint to Determine Dischargeability of Indebtedness — Page 2 of 20

**IN PACTA PLLC**
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 2 of 20

would appear to be unencumbered, and was followed by transfers of the collateral to third parties which generated significant benefits for the Debtors while severely damaging DZ Bank.

8. At all times relevant, Louis Meyer was the sole member and manager of Choice Insurance, a limited liability company registered under the laws of the State of Washington.

## DZ Bank and BCC Enter into a Credit Agreement

9. On August 27, 2004, BCC, as seller, Brooke Credit Funding, LLC ("BCF"), as buyer and issuer, and Textron Business Services, Inc., as initial servicer, entered into a Sale and Servicing Agreement for the transfer of various loans then payable to BCC by third parties (the "Sale Agreement"). Further, the Sale Agreement provides for the transfer of then-future loans from BCC to BCF upon the agreement of the two parties.

10. Also on August 27, 2004, BCF, as borrower, BCC, as seller, Brooke Corporation, as servicer and guarantor, Autobahn Funding Company, LLC ("Autobahn Funding"), as lender, and DZ Bank, as agent for Autobahn Funding, entered into a Credit and Security Agreement whereby Autobahn Funding agreed to finance BCF's acquisition of various loans under the Sale Agreement.

11. On August 29, 2006, BCF, as borrower, BCC, as seller, Brooke Corporation, as subservicer and guarantor, Autobahn Funding, as lender, and DZ Bank, as agent for Autobahn Funding, entered into an Amended and Restated Credit and Security Agreement (the "Amended Security Agreement"). A true and correct copy of

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 3 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 3 of 20

the Amended Security Agreement is attached hereto as Exhibit 1 (the Schedules and Exhibits thereto are omitted).

12. Under the Amended Security Agreement and subject to the terms and conditions therein, Autobahn Funding agreed to loan certain funds to BCF for BCF's purchase of various loans from BCC under the Sale Agreement. Id. at ¶ 2.04.

13. To secure BCF's obligations to Autobahn Funding under the Amended Security Agreement, BCF granted DZ Bank, as Autobahn's agent, a security interest in: (1) all of its right, title and interest in and to various loans that BCF had already purchased from BCC under the Sale Agreement; (2) all of its right, title and interest in and to various loans that BCF would be purchasing from BCC in the then-future under the Sale Agreement; and (3) various other collateral. Id. at ¶¶ 2.12-2.13.

14. When DZ Bank entered into the Amended Security Agreement, it did so for value, in good faith, and without notice of any defense that could be asserted against a holder in due course.

**Brooke Credit Finances Choice Insurance's Purchase of Five Insurance Agencies**

15. On January 25, 2008, Choice Insurance, as buyer, and Lindsley Insurance, LLC, Jabez & Associates, Inc., Timothy D. Paige, and Anita F. Paige, as sellers (collectively, the "Seller"), entered into an Agreement for Purchase of Agency Assets (the "Purchase Agreement") for the transfer of substantially all of the assets of five insurance agencies, including each agency's book of business (the "Agency Assets"), in exchange for the purchase price of $1,911,235.20. A true and correct copy of the Purchase Agreement is attached hereto as Exhibit 2.

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 4 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 4 of 20

16. On January 31, 2008, BCC, as lender, and Choice Insurance, as borrower, entered into a Promissory Note known as Loan No. 6779 ("Promissory Note No. 6779") and an Agreement for Advancement of Loan (collectively, the "Note"), in which BCC agreed to loan Choice Insurance $1,771,715.20 towards Choice Insurance's purchase of the Agency Assets under the Purchase Agreement. A true and correct copy of the Note is attached hereto as Group Exhibit 3.

17. To induce BCC to enter into the Note, the Debtors each unconditionally guaranteed Choice Insurance's obligations under the Note pursuant to a Guaranty (the "Personal Guaranties"). A true and correct copy of the Personal Guaranties is attached hereto as Exhibit 4.

18. To secure Choice Insurance's obligations under the Note, Choice Insurance granted BCC a blanket security interest in all of Choice Insurance's assets, including the Agency Assets, accounts and rights to payment, and all proceeds therefrom (collectively, the "Collateral"), pursuant to a Commercial Security Agreement (the "Security Agreement"). A true and correct copy of the Security Agreement is attached hereto as Exhibit 5.

19. The Collateral includes general intangibles, which includes customer lists. Id. at p. 1.

20. The Collateral further includes the right to be "Agent of Record." See Exhibit 5.

21. In the insurance industry, the "Agent of Record" is the person who has the authority to change the insurance company on an account, and is the person at whose direction the commissions are paid.

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 5 of 20

**IN PACTA PLLC**
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 5 of 20

22. Insurance agencies are typically valued at one to four times annual commissions, depending upon the perceived credit quality of the book of business.

23. BCC properly perfected its security interest in the Collateral by filing a UCC Financing Statement (the "Financing Statement") with the Washington Secretary of State. A true and correct copy of the Financing Statement is attached hereto as Exhibit 6.

24. Pursuant to the Note, Personal Guaranties, Security Agreement and other loan documents executed by Choice Insurance, BCC disbursed $1,771,715.20 to the Seller towards Choice Insurance's purchase of the Agency Assets.

25. In accordance with the Bill of Sale under the Purchase Agreement, and in exchange for the purchase price of $1,911,235.20, the Seller transferred all of its right, title and interest in and to the Agency Assets to Choice Insurance.

**BCC and BCF Assign the Choice Insurance Note to DZ Bank**

26. Contemporaneously with BCC and Choice Insurance entering into the Note, on January 31, 2008, BCF sent a Borrowing Base Certificate to DZ Bank whereby it requested that Autobahn Funding advance funds to BCF under the Amended Security Agreement for its purchase of the Note and various other loans (the "Advance Request"). A true and correct copy of the Advance Request is attached hereto as Exhibit 7.

27. Under the Amended Security Agreement, on January 31, 2008, Autobahn Funding loaned BCF $1,771,715.20 to purchase the Note from BCC. In conjunction therewith, BCC assigned the Note and Debtors' Personal Guaranties to BCF, and the Note and Debtors' Personal Guaranties became immediately subject to DZ Bank's lien under the Amended Security Agreement. See Exhibit 1, ¶¶ 2.12-2.13.

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 6 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 6 of 20

28. When DZ Bank funded BCF's purchase of the Note and accepted the Note as collateral under the Amended Security Agreement, it did so for value, in good faith, and without notice of any defense that could be asserted against a holder in due course.

29. In or about October 2008, BCF defaulted on its obligations to DZ Bank under the Amended Security Agreement.

30. On October 15, 2008, Choice Insurance executed an Acknowledgment and Agreement whereby it affirmed its obligations to DZ Bank under the Note (the "Acknowledgment"). A true and correct copy of the Acknowledgment is attached hereto as Exhibit 8.

31. On October 30, 2008, partially in reliance upon the Acknowledgment, DZ Bank, BCC, and BCF entered into a Surrender of Collateral, Consent to Strict Foreclosure, Release and Acknowledgement Agreement (the "Surrender of Collateral"). A true and correct copy of the Surrender of Collateral is attached hereto as Exhibit 9.

32. The Note and Debtors' Personal Guaranties are included in the Surrender of Collateral. See partially redacted Annex A to Exhibit 9.

33. Under Section 1.3.1 of the Surrender of Collateral and other provisions thereof, DZ Bank has full ownership of the Note and Debtors' Personal Guaranties. See Exhibit 9.

34. On October 31, 2008, DZ Bank and BCF entered into an Omnibus Assignment (the "Omnibus Assignment") whereby BCF further confirmed that DZ Bank has full ownership of BCF's rights as BCC's assignee under the Note and Debtors' Personal Guaranties. A true and correct copy of the Omnibus Assignment is attached hereto as Exhibit 10.

DZ Bank's Complaint to Determine Dischargeability of Indebtedness — Page 7 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 7 of 20

35. In conjunction with the Surrender of Collateral and Omnibus Assignment, BCF executed an Allonge to Promissory Note, whereby BCF endorsed Promissory Note No. 6779 and made it payable to DZ Bank (the "Allonge"). See Allonge, attached to Promissory Note No. 6779, which is part of Group Exhibit 3 attached hereto. BCF then surrendered the original Promissory Note No. 6779 to DZ Bank.

36. DZ Bank remains in possession of the original Promissory Note No. 6779.

**The Debtors Begin to Liquidate the Collateral Pledged to DZ Bank**

**Transfer #1 – Choice Insurance to Meyer Insurance/Lolynn Investors**

37. In or about October 2008, Choice Insurance, under the control of Louis Meyer, transferred certain Agency Assets to Meyer Insurance Agency, Inc. ("Meyer Insurance"), a company which was then owned and controlled by Louis Meyer.

38. Also in or about October 2008, Choice Insurance, under the control of Louis Meyer, transferred certain Agency Assets to Lolynn Investors, LLC ("Lolynn Investors"), a company which was then owned and controlled by Lynn Meyer.

39. The October 2008 transfers from Choice Insurance to Meyer Insurance and Lolynn Investors are collectively referred to as the "October 2008 Transfer."

40. Neither BCC nor DZ Bank consented to the October 2008 Transfer.

41. Choice Insurance, whose assets were properly pledged to either BCC or DZ Bank (depending on the precise date of the transfers) under the Security Agreement, did not receive any consideration in exchange for the transfers of Agency Assets to Meyer Insurance and Lolynn Investors.

42. The Debtors benefitted from the October 2008 Transfer because the Agency Assets became income-generating assets of the Debtors' other companies,

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 8 of 20

**IN PACTA PLLC**
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281 Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 8 of 20

thereby putting the valuable Agency Assets beyond the direct reach of DZ Bank, Choice Insurance's secured creditor. Moreover, the October 2008 Transfer was the first step in disguising the Agency Assets to be unencumbered, so that the Debtors could eventually transfer the Agency Assets to various third parties without payment to DZ Bank of the proceeds.

43. The proceeds of the October 2008 Transfer were not paid to BCC or DZ Bank to reduce the balance of the Choice Insurance Loan.

44. Following the October 2008 Transfer, Choice Insurance had no assets and was insolvent.

## The Debtors Continue their Liquidation of the Collateral Pledged to DZ Bank

## Transfer #2 – Meyer Insurance/Lolynn Investors to First Insurance

45. On April 23, 2010, Lolynn Investors and/or Meyer Insurance, as sellers, and First Insurance Agency Inc. ("First Insurance"), as buyer, entered into a Buy Sell Agreement for the transfer of the sellers' interest in various insurance policies, including in certain Agency Assets pledged to DZ Bank, as assignee, under the Security Agreement (the "April 2010 Sale Agreement"). A true and correct copy of the April 2010 Sale Agreement is attached hereto as Exhibit 11.

46. Under the April 2010 Sale Agreement, First Insurance agreed to pay Meyer Insurance a percentage of the annual commissions due under the transferred policies by monthly cashier's checks.

47. DZ Bank, the lienholder in the Agency Assets, did not consent to the transfer of the Agency Assets to First Insurance under the April 2010 Sale Agreement.

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 9 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 9 of 20

48. From about April 2010 through about April 2011, First Insurance made payments to Meyer Insurance under the April 2010 Sale Agreement.

49. The Debtors benefitted from the April 2010 Sale Agreement because the proceeds generated by the sale were used by the Debtors to pay a variety of personal expenses and debts, including those related to the Debtors' luxury home.

50. When Meyer Insurance received the payments from First Insurance under the April 2010 Sale Agreement, Meyer Insurance did not surrender those sales proceeds to DZ Bank for application to the Choice Insurance Loan, despite the sold Agency Assets having been properly pledged to DZ Bank, as assignee, under the Security Agreement.

51. DZ Bank was damaged by the April 2010 Sale Agreement because its Collateral had been liquidated by the Debtors and the proceeds were not applied to the Note.

**Transfer #3 – Meyer Insurance to Insurance Choices 4 U**

52. On June 4, 2010, the Debtors created The Meyer Irrevocable Trust, the primary beneficiaries of which are the Debtors (the "Meyer Trust"). The Debtors installed their daughter, Claudette Meyer, as the trustee of the Meyer Trust.

53. On December 1, 2010, the Debtors transferred all of their right, title and interest in Meyer Insurance, which still held various Agency Assets pledged to DZ Bank, as assignee, under the Security Agreement, to Insurance Choices 4 U, Inc. ("Insurance Choices 4 U"), a company owned by the Meyer Trust (the "December 2010 Stock Sale").

54. As consideration for the December 2010 Stock Sale, Insurance Choices 4 U, under the control of the Meyer Trust, agreed to pay $385,000 to Louis Meyer over

DZ Bank's Complaint to Determine Dischargeability of Indebtedness  Page 10 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 10 of 20

time, whereby $370,000 was allocated for the transfer of the Agency Assets and other insurance policies, and $15,000 was allocated for equipment and other personal property.

55. According to Louis Meyer's sworn deposition testimony, the $385,000 debt from Insurance Choices 4 U to Louis Meyer is undocumented, leaving the terms and conditions unspecified (the "Shareholder Loan").

56. DZ Bank, the lienholder in the Agency Assets, did not consent to the transfer of the Agency Assets to Insurance Choices 4 U under the December 2010 Stock Sale.

57. From December 2010 through the present, Insurance Choices 4 U has been making payments to Louis Meyer under the Shareholder Loan.

58. The Debtors are benefitting from the December 2010 Stock Sale and Shareholder Loan, because the funds being paid to Louis Meyer are being used to pay a variety of personal expenses and debts, including those related to the Debtors' luxury home. Moreover, the Debtors are not paying income taxes on the payments being made under the Shareholder Loan, as those payments have been disguised as repayment of principal, despite that no actual loan was ever made by Louis Meyer to Insurance Choices 4 U.

59. DZ Bank was damaged by the December 2010 Stock Sale and Shareholder Loan, because Insurance Choices 4 U took possession of the valuable Agency Assets, is making payments to Louis Meyer, but is not making payments to DZ Bank for application to the Note. Moreover, the December 2010 Stock Sale further concealed the fact that DZ Bank has a lien against the Agency Assets, in furtherance of the Debtors'

DZ Bank's Complaint to Determine Dischargeability of Indebtedness  Page 11 of 20  
**IN PACTA PLLC**  
*LAWYERS*  
801 2nd Ave Suite 307  
SEATTLE WA 98104  
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 11 of 20

scheme to transfer the Agency Assets to third parties without payment to DZ Bank of the proceeds.

60. Following the December 2010 Stock Sale, Meyer Insurance had no assets and was insolvent.

**Transfer #4 – Insurance Choices 4 U to Connect Insurance Agency**

61. Shortly after Insurance Choices 4 U's acquisition of certain Agency Assets under the December 2010 Stock Sale, on January 22, 2011, Insurance Choices 4 U, as seller, and Connect Insurance Agency, Inc. ("Connect Insurance"), as buyer, entered into a Buy Sell Agreement – Bill of Sale for the transfer of Insurance Choices 4 U's interest in various insurance policies, including in certain Agency Assets pledged to DZ Bank, as assignee, under the Security Agreement (the "January 2011 Sale Agreement"). A true and correct copy of the January 2011 Sale Agreement is attached hereto as Exhibit 12.

62. Under the January 2011 Sale Agreement, as consideration for the transfer of Agency Assets and other insurance policies, Connect Insurance agreed to pay Insurance Choices 4 U all commissions received via the transferred policies for a period of nine months.

63. DZ Bank, the lienholder in the Agency Assets, did not consent to the transfer of the Agency Assets to Connect Insurance under the January 2011 Sale Agreement.

64. From about January 2011 through about September 2011, Connect Insurance made payments to Insurance Choices 4 U under the January 2011 Sale Agreement.

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 12 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 12 of 20

65. From about September 2011 through the present, Connect Insurance continues to make payments to Insurance Choices 4 U under a side "management" agreement.

66. As a result of the January 2011 Sale Agreement and "management" agreement, Insurance Choices 4 U, under the control of the Meyer Trust, continues to funnel "tax-free" payments to Louis Meyer under the sham Shareholder Loan.

67. The Debtors are benefitting from the January 2011 Sale Agreement because the funds being funneled to Louis Meyer are being used to pay a variety of personal expenses and debts, including those related to the Debtors' luxury home.

68. When Insurance Choices 4 U received the payments from Connect Insurance under the January 2011 Sale Agreement, Insurance Choices 4 U did not surrender those sales proceeds to DZ Bank for application to the Note, despite the sold Agency Assets having been properly pledged to DZ Bank, as assignee, under the Security Agreement.

69. DZ Bank was damaged by the January 2011 Sale Agreement, because the valuable Agency Assets were transferred to a third party without payment of the proceeds to the DZ Bank for application to the Note.

70. The October 2008 Transfer, April 2010 Sale Agreement, December 2010 Stock Sale, and January 2011 Sale Agreement are collectively referred to as the "Collateral Liquidation"

71. In sum, the Debtors' carefully orchestrated Collateral Liquidation resulted in all of the valuable Agency Assets, which are pledged to DZ Bank, as assignee, under the Security Agreement, being transferred to third parties without payment of the

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 13 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 13 of 20

proceeds to DZ Bank for application to the Note. The Debtors have reaped the benefits of the Collateral Liquidation and damaged DZ Bank thereby.

**Choice Insurance and the Debtors Default Under the Note and Personal Guaranties Due to DZ Bank**

72. Under Page 2 of Promissory Note No. 6779 and Paragraph 13 of the Agreement for Advancement of Loan, non-payment is an event of default under the Note. See Group Exhibit 3.

73. On or about February 15, 2011, Choice Insurance defaulted under the Note by failing to make payments when due.

74. Likewise, on or about February 15, 2011, the Debtors defaulted under the Personal Guaranties by failing to make payments when due.

75. The amount due under the Personal Guaranties is $1,474,564.53 in principal, plus interest and attorneys' fees and costs.

76. On August 9, 2011, DZ Bank filed its Complaint against Choice Insurance and the Debtors in the United States District Court for the Western District of Washington as Case No. 11-1312-JLR for their breach of the Note and Personal Guaranties (the "District Court Matter").

77. On July 16, 2012, the Debtors filed a Voluntary Petition (the "Petition") for relief in this Court under Chapter 7 of the Bankruptcy Code. Pursuant to Schedule F of the Petition, DZ Bank is listed as an unsecured non-priority creditor of the Debtors.

78. On January 15, 2013, the Court in the District Court Matter granted DZ Bank's Motion for Summary Judgment and thereafter will enter judgment in favor of DZ Bank and against Choice Insurance in the amount of $1,474,564.53 in principal,

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 14 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281 Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 14 of 20

$174,454.95 in interest, and $61,450.45 in attorneys' fees and costs, for a total judgment amount of $1,710,469.93. See Dkt. # 57.

## COUNT I –
## DZ Bank's Claim for Fraudulent Conveyance of DZ Bank's Collateral is Non-Dischargeable under Section 523(a)(2)(A)

79. DZ Bank realleges Paragraphs 1 through 78 as though fully set forth herein.

80. Pursuant to § 523(a)(2)(A) of the Bankruptcy Code, a debtor will not be discharged for debts obtained by actual fraud.

81. RCW 19.40.041(a)(1) provides that: [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation […] with actual intent to hinder, delay, or defraud any creditor of the debtor.

82. In determining actual intent under RCW 19.40.041(a)(1), consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 15 of 20

**IN PACTA PLLC**
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281 Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 15 of 20

before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lien or who transferred the assets to an insider of the debtor. RCW 19.40.041(b).

83. DZ Bank has standing to bring this claim as a creditor of Choice Insurance.

84. Each of the four transfers under the Collateral Liquidation constitutes a fraudulent conveyance amounting to "actual fraud" within the meaning of § 523(a)(2)(A).

85. The October 2008 Transfer was a fraudulent transfer, because (1) the Agency Assets were transferred to companies under the control of the Debtors without consideration; (2) the Debtors, through Meyer Insurance and Lolynn Investors, retained control of the Agency Assets after the transfer; (3) DZ Bank did not consent to the transfer; (4) the transfer left Choice Insurance insolvent and without any assets; and (5) DZ Bank had threatened suit against the Debtors.

86. The April 2010 Sale Agreement was a fraudulent transfer, because (1) the transfer of certain Agency Assets was concealed by the Debtors; (2) DZ Bank did not consent to the transfer; (3) the transfer amounted to substantially all of the assets of Lolynn Investors (all of which were originally received from Choice Insurance); (4) the proceeds of the transfer were not paid to DZ Bank; and (5) DZ Bank had threatened suit against the Debtors.

87. The December 2010 Stock Sale was a fraudulent transfer, because (1) the remaining Agency Assets were transferred to an insider - a trust under the actual control of the Debtors - without consideration; (2) the Debtors, through the Meyer Trust, retained control of the remaining Agency Assets after the transfer; (3) the transfer was concealed

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 16 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 16 of 20

by the Debtors; (4) the transfer was for all of the assets of Meyer Insurance (which were originally transferred from Choice Insurance); (5) DZ Bank did not consent to the transfer; (6) the proceeds of the transfer were not paid to DZ Bank; and (7) DZ Bank had threatened suit against the Debtors.

88. The January 2011 Sale Agreement was a fraudulent transfer, because (1) the transfer of the remaining Agency Assets was concealed by the Debtors; (2) DZ Bank did not consent to the transfer of the remaining Agency Assets; (3) DZ Bank had threatened suit against the Debtors; and (4) the proceeds of the transfer were not paid to DZ Bank.

89. The Debtors carried out the Collateral Liquidation with the actual intent to hinder, delay or defraud DZ Bank.

90. After the Collateral Liquidation was complete and following each of the transfers thereunder, Choice Insurance was insolvent, had no assets, and was unable to satisfy its obligations to DZ Bank.

91. Actual fraud occurred, because the Debtors carried out the Collateral Liquidation with the actual intent to hinder, delay or defraud DZ Bank, in violation of the Washington Uniform Fraudulent Transfer Act, RCW 19.40 et. seq.

92. Under the Collateral Liquidation, the Debtors directed Choice Insurance to sell the Agency Assets and the Debtors used the proceeds to pay a variety of personal debts and expenses, which resulted in Choice Insurance failing to meet its obligation to DZ Bank.

93. The proceeds of the Agency Assets were utilized for the benefit of the Debtors.

DZ Bank's Complaint to Determine Dischargeability of Indebtedness    Page 17 of 20    **IN PACTA PLLC**
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 17 of 20

94. The fraud created new debts from the Debtors to DZ Bank, which is the subject of this Count against the Debtors.

95. DZ Bank suffered damages in the amount equal to the value of the Agency Assets at the times they were transferred to third parties, which is one to four times the actual commission revenue generated by the customers whose business was transferred.

96. The Debtors' conduct violates § 523(a)(2)(A) of the Bankruptcy Code, and, therefore, the Debtors' indebtedness to DZ Bank constitutes a non-dischargeable debt.

### COUNT II - 
### DZ Bank's Claim for Fraudulent Conveyance of DZ Bank's Collateral is Non-Dischargeable under Section 523(a)(6)

97. DZ Bank realleges Paragraphs 1 through 96 as though fully set forth herein.

98. Pursuant to 11 U.S.C. § 523 (a)(6), the discharge of a debt will be denied for the Debtors' willful and malicious injury to another entity or to the property of another entity.

99. The Debtors' orchestration of the Collateral Liquidation as a whole, and/or the individual transfers thereunder, constitutes willful and malicious conversion of DZ Bank's security Interest in Choice Insurance's assets.

100. The Debtors willfully and maliciously injured DZ Bank and DZ Bank's Collateral, as the Debtors desired to cause the consequences of their acts and/or believed that the consequences of their acts were substantially certain to result from them.

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 18 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 18 of 20

101.    DZ Bank suffered damages, as its Collateral, namely the Agency Assets, were sold to third parties and DZ Bank did not receive the proceeds for application to the Note.

102.    The Debtors' conduct violates 11 U.S.C. § 523 (a)(6) and, therefore, the Debtors' indebtedness to DZ Bank constitutes a non-dischargeable debt.

103.    DZ Bank suffered damages in the amount equal to the value of the Agency Assets at the times they were transferred to third parties, which is one to four times the actual commission revenue generated by the customers whose business was transferred.

WHEREFORE, Plaintiff DZ Bank respectfully requests that this Court:

WHEREFORE, Plaintiff DZ Bank respectfully requests that this Court:

A.    Declare that the portion of the debt owed to DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, NEW YORK BRANCH by LOUIS PHILLIPUS MEYER and LYNN MEYER, jointly and severally, equal to the fair market value of the Collateral at the time it was transferred to third parties, be deemed non-dischargeable; and

B.    Grant any other relief that the Court deems just and proper, including a judgment against the Debtors, jointly and severally, and in favor of DZ Bank for the amount equal to the fair market value of the Collateral at the time it was transferred to third parties.

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 19 of 20

IN PACTA PLLC
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 19 of 20

Dated: January 15, 2013

Respectfully submitted,

DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN, NEW YORK BRANCH

By: /s/ James Vasquez
James Vasquez, WSBA #34514
IN PACTA - PLLC
801 2ND Avenue, Suite 307
Seattle, WA 98104
206-734-3800 (telephone)
206-860-0178 (fax)
jv@inpacta.com

-and-

Alex Darcy, Esq. (#06220515)
Michael W. Debre, Esq. (#6296197)
ASKOUNIS & DARCY, P.C.
444 N. Michigan Ave., Ste. 3270
Chicago, Illinois 60611
P: 312-784-2400
F: 312-784-2410
adarcy@askounisdarcy.com
mdebre@askounisdarcy.com

*Attorneys for DZ Bank*

DZ Bank's Complaint to Determine Dischargeability of Indebtedness

Page 20 of 20

**IN PACTA PLLC**
*LAWYERS*
801 2nd Ave Suite 307
SEATTLE WA 98104
PH 206.709.8281  Fax 206.860.0178

Case 13-01036-MLB    Doc 1    Filed 01/15/13    Ent. 01/15/13 20:50:08    Pg. 20 of 20